Good morning, everyone. We have an admission this morning. Will the candidates please come forward? Please come to the podium. I shall invite Judge Moore to proceed. I move the admission of Henry Leon Outland III, who is a member of the Bar in good standing of the highest court of Texas. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications to be a member of our Bar. Leon has served as my law clerk for nearly a year. I have been incredibly impressed with his performance, his intelligence, his demeanor. He's been a wonderful addition to the court. Before I hired him, he clerked for a district court judge who said, this is the best clerk I ever had, and he has not disappointed me at all. He's been a wonderful clerk. I'm happy to have his mother, Terry Glover, here to witness him being sworn in. I have no doubt that you'll be a productive contributor to our Bar. I move for his admission. I leave it to my colleagues to decide if I've been compelling enough. We shall discuss your candidacy. No dissenting. It is in favor. We are pleased indeed, unanimously, to accept your application and to welcome you to the Bar of this court. Thank you, Judge. Will you proceed to the clerk for the oath of admission? These comments were to affirm that you report yourself as a counselor and attorney of this court uprightly in accordance with the law, and that you will support the constitution in that case. Thank you. Welcome to the court. Thank you. At least to this aspect of the court. Thank you. Thank you. We shall proceed with the case to be argued this morning. Number 2012-1199, McKesson Automation, Incorporated, against TransLogic Corporation. Mr. Josephson. Good morning. As the court knows, the patented invention is a system in which a computer directs a robotic picking means to a storage rack, where the storage rack can select, where the picking means, excuse me, can select a specific drug that the computer knows will be at that specific location. Now, the two claim construction disputes on this appeal concern the interface between the picking means and the storage rack, and they're both best illustrated by Claim 1 of the 110 patent, the plain language of that claim. That claim specifies on four separate occasions that storage area locations, excuse me, that the picking means can put packages into storage area locations and remove them from storage area locations. The jury found no infringement here, correct? Correct. And so we have to, is it your contention that we have to resolve each of these claim construction issues, because if either of them were wrong by the district court that we would have to send the case back? Is that correct? Correct. We're not raising infringement issues. We're not raising trial issues. We're raising the two claim constructions. And if either was wrong, right. You are raising infringement issues to the extent that the jury based the decision on the claim construction, correct? Right. But the point is we're raising these two legal errors, and if either jury instruction or the failure to give one of the jury instructions was wrong, then yes, we would be entitled to a new trial. Since it's a question of law, wouldn't we be able to determine that claim of construction ourselves? Oh, absolutely. And if you mean the storage area location, I think in this case you almost have to, in that even the way Swiss law is arguing the XY coordinate location issue, their view of XY coordinate location turns apart on their view of storage area location. And as a result, the two are so interrelated that I think in this case you really have to determine them both together. But on storage area location, as I mentioned, the claim one, the only independent claim of the 110 patent, specifies four times that storage area locations are places that the picking means can put packages into and take them out in each of the first four elements of the claim. And that's conclusive on the second question presented, the storage area one, because it means the storage area locations are indeed places that the picking means can reach, can put packages into or take them out of. Claim one also is then very helpful with respect to the XY coordinates because it specifies that storage area locations have distinct XY coordinates. So it ties the distinct XY coordinate locations to the storage area locations, meaning that, again, therefore, because the picking means can put packages into and take them out of storage area locations, that means that it's doing the same thing at the distinct XY coordinates. At a very basic level, your argument is that the claims and the specification suggest to us that what's important here is that the XY coordinates tell the robot where to go in order to pick the medicine. Where to go on the loading end of the storage rack, yes. That's the role of the XY coordinates. The computer is programmed with the XY coordinates, and it can send the picking means to a particular XY coordinate where it knows that a particular drug can be found. That's where it sends the... But I'm kind of confused. Are you saying then in the accused device that the storage area location is not the place where the drugs actually reside, but rather the place where they come to the end of the conveyor belt? That place that they then occupy at the end of the conveyor belt, that's the storage area location? The storage area location would be the area in which the rod that at any given time is at the loading area is. So in other words, the storage area location holds a rod with packages in it. And the claim says specifically over and over that the picking means can reach into and out of storage area locations. So the storage area location is that volume that at any given time is at the loading end. Now, I would also remind the court, though, and we think this is really important and perhaps is where the dispute comes down to, that consideration of accused products is supposed to be absolutely irrelevant to claim construction, the reason being that the meaning of the claims depends, of course, on the intrinsic record from the prosecution and doesn't have anything to do with, certainly doesn't change as products are later developed. Now, the reason, and this court explained that in cohesive technologies, the reason that's not just legally true but also really important is that when you're looking at something, what you see tends to depend in part on the vantage from which you're looking at it. That's the point about hindsight bias and obviousness analysis. So if we just look at the claim language in light of the specification, the intrinsic evidence, you see one thing. So much of their brief is about non-infringement of any accused products. The reason that's legally irrelevant is that, one, it doesn't affect the meaning of the claims, but two, it also skews the perspective. And with respect to where then, so we know where the storage area locations are from the very plain meaning of the claim one. With respect to XY coordinate locations, there are a few things that also directly address it. First, the specification twice explains what the computer does with the XY coordinates. It says the computer can direct the picking means along a track in front of the storage area location that corresponds to the X coordinate and then can move it vertically along a column corresponding to the Y coordinate. So it's on a plane, the XY coordinates for your 110 pad. We're looking at a plane. So a placido would look and understand that to mean that X, you find X here and then Y and wherever they intersect, that's where the robot goes. But how does that convey to the conveyor belt of the accused devices? Well, you're right. The role of the XY coordinates is to tell the picking means where to go on the picking plane, if you will, at the loading end of the dock, which, as you said, is a two-dimensional plane. If you have a storage rack that has rotating conveyors on the inside, then you're right, the computer would also need to know additional information. But there's nothing in, again, getting an infringement, but infringement turns on whether the accused product possesses all the claim limitations, not the other way around. So the fact that you could have additional features, additional aspects of the invention, doesn't negate infringement because the claim elements are still there. The XY coordinates are still in the computer. And, of course, it's contemplated that the computer would include a lot more than XY coordinates. For example, the computer, we know it would have Z coordinates in almost any embodiment because it needs to go toward a storage rack, away from the storage rack, to, for example, go from one storage rack to another, which is discussed extensively in the specification, or perhaps to go to a conveyor belt where it deposits the packages. So we know for sure the computer isn't limited to the XY coordinates. It has to have other information. But to prevail, Jeff, I don't want to interrupt you, but to prevail, do you need to claim construction that explicitly does not exclude the three-dimensional device? Well, does not exclude the three-dimensional. That is, you want the construction for the XY in the plane, and the argument for infringement, as I understand it, was that the accused device operated in three dimensions. That is part of their argument. Now, of course, all of these, any embodiment operates in three dimensions. We don't need, you know, the three dimensions doesn't need to be discussed at all in any of the plane constructions. Our construction of XY coordinate is simply that it's a place where the picking means can put packages into or take them out of. And for storage rack location, it's the same. A place that's successful with picking means, that the picking means can actually put packages into or take them out of. That's all we need. Okay, so then what do you want changed in the claim construction? Well, the claim construction... Well, first, for storage area location, we want to construe it all. No construction went to the jury on that over our objections. So that claim construction issue, it was left to dueling expert testimony. In a new trial, the jury should be instructed on that question of law, the meaning of storage area location. And our proposed construction is that the storage area locations are... Picking means that are accessible to the picking means. Picking means can put packages into and take them out of. For XY coordinate, our proposed instruction is, again, that there are coordinates where the picking means can reach, grab, select, remove packages. I don't understand your storage area location construction. The plain meaning to me, it seems to be where the pills are stored. I mean, where are these pills stored? And that seems to be the approach the district court had. So what is the error? I mean, I don't see the complication that it needed some sort of special instruction. Sure. The party's substantive dispute is whether storage area locations are locations that the picking means can reach, which is to say locations that the picking means can get from the loading end of the storage rack. That's our view. Their view is that storage area location can be anywhere on the storage rack, including a place that the picking means can't get to. That's the substantive dispute. And so that's what needs construction. In terms of how to resolve it correctly. But isn't the basic word storage? So why wouldn't the storage area location be where the pills are stored? Right. That's the language that was used. A couple things. One is that, I mean, no one thinks the storage area location is just a dictionary definition anywhere you store something. For example, they agree it's at least within the claimed storage rack, the recited storage rack. But the other thing is in defining- But did either of you argue that the word storage has special meaning in this art and shouldn't be given its plain and ordinary meaning? We've argued vigorously that the claim language, of course, has to be read as a whole. No, but that's not what I asked you. I asked you, did you argue that the word storage should not be given its plain and ordinary meaning? That somehow there's a lexicography here that requires it to have a difference than normal meaning? Right. Our argument is that the term storage- No, no, no. Did you argue- Yes, but about storage area location, not just storage is what the clarification I wanted to make. We argue the term storage area location when you read the patent as a whole. Okay, so you answered yes. So your argument, just so I understand it, is that the word storage area location should not be given their plain and ordinary meaning, but rather this patentee acted as its own lexicographer to define them in a different than ordinary way. Is that correct? And clearly expressed such an intent. Now, the other way of looking at it, again, is that as this court emphasized in a couple of cases cited in the brief, the court doesn't just construe terms in isolation. It construes claims as a whole. And there are times when a limitation is on the face of a claim, but not just in one word. It's the relationship of several claim elements can establish a claim element. And when that happens, the way that the court does the claim construction, the way the court constructs the jury in our system, is to put that limitation into the meaning of one of the claim terms, even if that claim term by itself wouldn't mean that. So, for example, in Paws Against Tevo, the court defined, after explaining what I just said, the court defined a type of buffer to include what it does and how it did it. The reason is that's way beyond what the word buffer would mean. But it was a limitation described in the claim, and therefore the jury had to be instructed on it, and he put it inside that definition. The dispute here has never been whether this limitation that we're talking about is properly within the definition of one term or somewhere else. Our point is just that the jury has to be instructed on the limitation in some way, and no one's ever disputed that doing it. We've never said that. We've never held that a district court must construe every word in a claim. So what is your precedent for the suggestion that the jury must be construed on this term and not to do so with legal error? Well, it's the O2 micro line of cases where the parties present a genuine dispute. The court has to resolve it. And here, we have a very important substantive dispute about whether the distinct XY coordinates on the storage area locations are on the ticket plan or elsewhere. But the court did construe the distinct XY coordinates. It did that. More of the storage area location he didn't construe. Right. For the 110 patent, the court did not construe storage area location. The magistrate judge Stark did, and the district judge then decided not to. But the dispute is that... The dispute, again, is the substantive one. Do the storage area locations have to be places that the picking means can actually reach into, can actually reach, or can they be places elsewhere on the storage rack? That's a substantive dispute, squarely presented to the court. It doesn't explain the meaning of the word storage. You're trying to define storage as a requirement that it be located at a certain point on a plane in order for the robot to be able to pick the medicine. The question is where... The disputed question is where storage area locations are. And as in... But on your 110 patent, the XY coordinates tells the robot where to go, so that's a different interpretation you have for your 110 patent, isn't it? The main difference between the two patents is just that the 267 refers to storage rods with distinct XY coordinates, and the 110 refers to the storage area locations, which is a bigger concept, a bigger, different concept, with storage having the distinct XY coordinates. But the operation's otherwise the same. It's the difference between rods and storage area locations is the main difference between the two. What you're asking us to do is to read the limitations of the embodiments into the claims. No, everyone agrees that there's an accessibility limitation of some sort. What we're asking is the direct specific claim language that says over and over that, for storage area location at least, that the Pekingese can reach the storage area locations. We're saying that Zuri has to construct it on that limitation. And even if it seems a little awkward to put that in the definition of any one claim term, it's a limitation that appears in the face of the claim, and hasn't paused. But your definition is so contrary to the plain meaning, which is what makes it difficult. You want the storage area location to be the plane where the Peking plane is going to ultimately grab the package. But that's not where it's stored. And that's the problem. In the patents, it is where it's stored, because it's a somewhat two-dimensional system. But in the accused device, it's not. So you want to contort the definition to cover the accused device in a way that is just so contrary to its plain meaning. I think that's why I'm struggling with this. I think in terms of plain meaning, again, looking at the claims, our point is to look at the plain meaning of all of the claim language, not just the word storage area. And what you see when you look to all the plain meaning... Here's what I feel like you want us to do, Mr. Josepher. If I defined a bicycle having two wheels and a frame connected to it, you want me to say, well, wait a minute. Whatever the frame is connected to must be the wheel. What? That's not the way you define... Wheels are round. If the frame had to be connected to some sort of suspension system, which was then connected to the wheels, the suspension system doesn't become wheels simply because the claim structurally defined them as connected. And I feel like that's exactly what you're asking us to do here. You're asking us to say the storage location is where the picking means does the choosing because in the claim, that's... Because the claim says so. The claim says the storage location the picking means has to do choosing at the storage location. Correct. But that doesn't make the storage location in all cases the place where the picking means does its picking. What we have here is the term of our storage area location. The question is just where is it? And on the face of the claims, we know that it's a place where the picking means can reach because the claim says so four times. The claim storage area location is term of art. The claim storage area location has to be where the picking means can reach because the claim completely says it. The reason this is important is that then there are limitations on this storage area location that has to have a distinct XY coordinate. And so you can have lots of other stuff but the limitation of a distinct XY coordinate applies to the storage area location. The storage area location is where the picking means goes, which makes a lot of sense because the computer directs the picking means to an XY location precisely because it knows that that's where it can get the relevant drug. And so what we're... Is that all right? Let's see it from the other side and we'll save you a rebuttal and if we need to pursue this point, we will. Thank you. Thank you, Mr. Joseph. Mr. Fabricant. Good afternoon, Your Honor. I would like to start where we ended, which is to address this storage area issue. I tried the case before Judge Robertson in the District Court and to answer Judge Moore's question, there was never an argument in any brief or presented at any part of the proceeding that storage area location was a term in which the patentee was his own lexicographer. It just didn't occur. And in fact, I think what's most telling here is to just look at the Profford claim construction of McKesson which Judge Robertson rejected. It doesn't even involve the arguments which McKesson is now making before this Court. The simple Profford claim construction was a place in the storage area accessible to the picking means where packages are held. Nothing about having to be on a plane, nothing about where the picking means moves to, just that it must be accessible. That the picking means must be able to access the storage area. That's all. What's important about that is Judge Robertson found that there was precise detail in the claim itself. In fact, a separate element of accessibility, four separate elements of accessibility in the other elements of the claim. So she found no reason to have to duplicate that in a construction of a very simple and common word, storage area. And so she let it go to the jury. She affirmatively found there was no need to construe this term. To give it it's plain and ordinary meaning. And then it went to the jury on a very simple factual question. Not a legal question. Didn't leave it to the jury to construe the claim. It went on a factual question whether the storage area locations of the accused device were or were not accessible. The very same claim scope which is now being urged as requiring claim construction. The very same claim scope. There was no dispute as to claim scope. So the factual question was was it or not accessible and the jury found that there was accessibility. So that's why there is no need and I think Judge Robinson did a very fine job in explaining why there need not have been claim construction. I think Judge Moore's recent decision in Active Video versus Verizon in August of 2012 is exactly on point with respect to why O2 Micro does not in this case require construction. Certainly not construction after 8 years in remand for another trial. On an issue that already went a factual dispute that already went to the jury on accessibility. With respect to the XY coordinate construction very similar. The claims control this construction. This is one of the examples of a patent where the claims define clearly define what the XY coordinate is to be assigned to. It's to be assigned to supply rods. It's to be assigned to rods. It's to be assigned to storage area locations. And it's to be assigned to medicine packages. But that doesn't exclude the accused system. Well the accused system is irrelevant. We say ignore the accused system. We're here on a claim construction de novo review. The claims are clear and they speak for themselves. The assigned XY must be attached to those structures. Now what McKesson is arguing is that you need to ignore the claim language. Go to the specification. Look at an embodiment where it talks about a single plane and a track. Import that into the claim so that the XY becomes attached to the location of the movement of the picking means. Not the location of the rod. Well it would be absolutely contrary to the words of the claim. And then of course we shouldn't be importing the language from the specification into the claim to begin with. Now I'll give some examples as to why we shouldn't, particularly in this case. It's not a matter of language, it's a matter of construction. Yes, it's a matter of construction. And in this case for example, the example which Mr. Joseph gave about in the specification is an embodiment where the picking means moves along an XY track, a single track. Well in the prosecution history this patentee argued a distinguishing over the O'Neill reference. And in that file wrapper rejection and the distinguishing over O'Neill, the patentee argued that in this invention the picking means does not need to move along a single track. It is not limited to a single plane. That it can move in the XYZ direction. So even the embodiment, which Mr. Joseph would ask that this court bring into the claim is inconsistent with the file wrapper. And that's just one example. So our argument here really is really down to the claim language, the claim language here which requires that the XY coordinates be tied to the rods, the storage area locations. Now another example I think which makes it completely clear, which tells this court why it should ignore this attaching the XY to the movement of the picking means instead of the structure. Both patents in claim 1 of the 110 and in claim 1 of the 267 require that all packages in the storage area not just the storage area location all packages in this entire system have a distinct or unique XY coordinate location. All packages, doesn't matter whether they're on the picking plane, doesn't matter whether they're rotating, doesn't matter where they are, all packages What portion of the claim on claim 1 of the 110 patent would you direct me to that requires that all packages as opposed to each location have a distinct XY? Yes, in the 110 Your Honor I would direct the court to element D. And in the 110 element D it says a database containing at least one XY coordinate location in the storage area, that's the whole system, for each package held within the storage area. And then similarly in the 267 element C a computer having a database containing an XY coordinate location for all packages in the holding means. That's the entire structure. So here we have express claim limitations which say regardless of anything else, all packages in this entire system must have No, I mean in fairness to Mr. Josepher, under his construction this claim limitation is met because the XY coordinate location has to be distinct for each package held in the storage area and he says the storage area is that plane on the end and if the storage area is that plane on the end, each package that is in that plane on the end is at a distinct XY location. Not every package in the system, which is what you're arguing, but the claim doesn't require every package in the system. It says every package held within the storage area. Your Honor, the storage area is not the storage area location. There are two different components here. The storage area is the entire system. In fact, I would refer Your Honor to element A. Storage area is comprised of all of this. So the element requires that every package in the entire system have a unique and distinct XY coordinate location, regardless of where the picking means is coming from or moving to. And I think most important, there's simply no requirement in the claims. Well, why would A be the whole system? Why isn't why isn't the storage area location the individual location at the end of each conveyor belt, but the storage area is that plane at the end, comprising all of those individual locations? Well, Your Honor, the storage area, this is a giant drug nest system, whether it's McKesson's or whether it's Swiss Logs. It's a giant system within which there are a large number of storage areas, thousands of storage areas within the storage area, thousands of storage area locations. So if we look at the... Well, but that's only if I accept your definition of storage area location. I mean, I'm trying to suggest to you that under his definition, if we were to accept it, I don't see what you're pointing to as precluding us from accepting his definition. Well, and also, I would point out that the parties agreed that the entire drug nest was the storage area. It wasn't even a dispute in the proceeding below. It was clear throughout the entire proceeding that the drug nest was this entire storage area, and that the storage area locations are these locations. Can you say the parties agreed to that? Is there some document somewhere that would have me understand that? I remember that there was no dispute on this issue. I believe it's also consistent with the plain reading of the claim elements. I can't say offhand what the specific reference would be. And I would also say on the issue of storage area location, as Mr. Joseph stated, the only difference between the 110 patent and the 267 patent, which was the first file, there was a storage area location, which is where the medicines would be held. And in the 267 patent, they narrowed the language to a rod. A storage area location, in fact, has within it a package holding means. Magistrate Judge Stark had construed package  disputed to mean either a rod or a clip or a clamp or a shelf. So all storage area location is, for all intents and purposes, is a rod. It's a rod within a location that's found within thousands of these within a storage area. So the only point that I'm trying to make, Your Honor, is that... Well, doesn't the rod extend all the way out to the end of the system? I mean, the rod is not contained nested within solely. It extends all the way out to the area of the accused device that they would say constitutes the storage area location. Well, the rod certainly extends from the supply rack. They're short rods. It's not like they extend forward. It certainly extends from the supply rack, but there's no requirement in any of the claims that that rod at any given point in time, at any moment in time, has to be in one location as opposed to another location. I guess you don't understand what I'm getting at, which is to the extent that the claim says the plurality of storage area locations, each location having the packet holding these, which is the rod, his argument is I imagine it would be, and maybe I'm wrong, he'll correct me, I'm rebuttal, certainly, but would be at the storage area location, which is the plane at the end, there is a rod. The rod extends into that area. The claims don't require the rod be entirely encapsulated within the storage area location, but just be part of. Well, I would agree that when the rod in the accused device comes to the location where the picking means can grab it, then the rod has to be accessible. Now, accessible does not necessarily mean, this is different, I think Your Honor is referring to the fact that the rod must extend from the supply rack, which is claimed. The supply rack is within the storage area. There's no requirement that this rod actually  system in order for this picking to occur, and in fact, to the contrary, figure 12 and the specification and the embodiments show that the picking means can move in an XYZ direction, which means the picking means has the capability of going into the storage area and selecting without the rod physically ever extending. There's no requirement that the rod extend from the whole system, just that it extend from the supply rack. And I would also argue that these arguments went to the jury on the factual issues, really it boiled down to accessibility. Because every claim in this suit required these separate elements that the picking means be able to access. Didn't say where it had to access, didn't say whether it had to be on a plane, didn't say whether it could be behind the plane, but it did have a requirement of accessibility. And both sides presented to the jury at trial their case, with their technical experts, with their evidence, as to whether or not these storage area locations or rods were accessible. And the jury found that the storage area locations and the rods were accessible. And that was the result of non- infringement. And therefore, we respectfully believe that the claim construction of Judge Robinson should be affirmed, and that the decision of Judge Robinson that storage area location did not need to be construed as a matter of law should also be affirmed. Thank you. Thank you. Mr. Joseph, you have a few minutes for rebuttal. Thank you, Your Honor. Start with the XY coordinate locations in both patents. If you turn to, one thing I hadn't mentioned yet, if you turn to figure three, of the common specification, it's a figure of the storage rack. It doesn't have the whole thing as a storage rack. And if you look at the bottom left corner, it shows that the x-axis is the horizontal across the front of the storage rack. The y-axis is the vertical axis across the front of the storage rack. And if you're going in or out, that would be the z-axis. In other words, it shows what the specification says elsewhere in the places I was talking about, that the XY coordinates are along the front of the storage rack. It's the interface between where the picking means and the storage rack. And we're not importing a limitation here, because everyone agrees that there's some kind of limitation concerning the accessibility of the picking means to other things. The question is how to interpret it. And figure three and the other two places in the spec that clearly describe the XY coordinates being a track and a column, I'll make clear that the XY coordinates are up front. Even if we adopt your RD construction, how does the accused devices infringe with respect to their being on a conveyor and their turning and their revolving? Right. And this is an important point. The interior of the drug nest, where you have this revolving, is simply irrelevant to the patent and invention in the same way that what kind of computer you use, what kind of computer processor you use, is simply irrelevant. It's not what was invented, it's not what was claimed. The claims here require a focus on a computer moving a picking means to the front of a storage rack so they can select a drug. What happens behind there is largely irrelevant, and the specification shows that in a couple places. One is... But not if we adopt the construction of a storage area being the rods as opposed to the place where they're accessible. Right. Well, first off, the storage area location is in only the one of the two patents, right? The 110 patent. Also, I think everyone agrees storage area is not a rod. The reason it's a different phrase is if you have a storage area, in the middle of the storage area, roughly, just as an example, in the middle of the storage area you have a rod, and you have a bunch of packages hanging off of the rod, and that's what's in the storage area. The storage area is more of a volume, which is why it's a different term than rod. Is storage area... Did he correctly represent that the storage area is the entire nested structure? I'm sorry. It's important to be precise. The storage area location obviously we're arguing is not... Yeah, but I'm asking did he correctly represent that there has been no dispute, but that both parties at all times have treated the storage area as opposed to the storage area location, which is a separate claim term, as the entire nested structure. I don't recall the dispute on... I don't recall that getting teed up, not conceded, not getting teed up. It's not the way it was... I don't remember it being argued that way. So if the storage area location is the entire nested structure, storage area, not the storage area location, the storage area is the entire nested structure, then why isn't he right that element D limits the XY coordinate location to the location where each package in the entire nested structure is held? Why doesn't element D further explain that the distinct XY coordinate is where the packages are stored as opposed to the plane where the picking occurs? Well, remember the distinctness requirement applies to rods and storage area locations. No, but I want you to look at element D and tell me what is wrong with the argument that he made. Are we in the 267 patent? I'm in the 110 patent. Claim number one of the 110 patent, element D, which says one XY coordinate location in the storage area for each package held within the storage area. Right, and what I was trying to answer, each package is not supposed to have a different XY coordinate from every other. For example, everyone would agree, because the claim says that a rod is the distinct XY coordinate applies to, for example, a rod. So when the packages say that there's a distinct XY coordinate or unique, sometimes they say XY coordinate for the rod and the packages, what that means is simply that there's exactly one XY coordinate for any given package or rod. It can't mean that they're all different, because I mean, they're not different for the packages. Everyone would agree with that. So in other words, when a package or when a rod is at the picking end, it's at exactly one XY coordinate location. That's the only one it can go to. So the district court denies that judgment. That's not each package held within the storage area. The storage area is the whole thing. It doesn't say each package held within the storage area location. It says within the storage area, and we have to give those different claim terms different meanings. What I was saying is that for each package, each package, period, without a deal with it, each package in the storage rack has exactly one XY coordinate for it. And that's what it means to have a unique or distinct XY coordinate, that there's exactly one XY coordinate for it. And that's true of every package in there. Because any rod is going to go out to exactly one place on the loading end, the picking plane. That's what it means to be distinct. And the district court denied summary judgment on this. This is a different non-infringement theory. The district court denied summary judgment on this for exactly that reason. That distinct or unique doesn't mean that each package, each rod, has a different XY coordinate. And it can't, because everyone agrees that the package... I'm having the same difficulties that Judge Moore has. Maybe you can help me this way. Look at Figure 3. And look at Item 30. That's a rod. So, the way I see this is that all of the medications on that rod, on 30, are all the same. Yes. Okay. So I can understand how you can have an XY coordinate that identifies all of those medications that are located on that rod, on that storage area. But when you look at the Q's device, you have a conveyor belt, and you have different medications that are located in different areas of the storage area. And when the conveyor turns and it comes out to the front, then it comes to the front of the picking plane. And I can understand that, but what happens to all of the medications you have that are behind the plane now? I mean, when you look at the element that Judge Moore is directing your attention to, it does say in the storage area for each package held within the storage area. Each package in the storage area has one XY coordinate associated with it. But another way of looking at it, right, is even if that rod, just looking at these rods, these packages... Figure 3? Yeah. The front package, right, you could say is actually physically at the XY coordinate, because it's in the front, which is where the XY plane is. The ones farther back, they have the same XY coordinate, because they go out to that same physical XY coordinate. They go out to it, but they're not physically there most of the time, because they're farther back in the machine. No, no, but they are physically in the exact same XY, because Z is the dimension that they're not the same in. So all of the three packages listed on any given rod are in a distinct, in exactly the distinct XY, aren't they? Certainly in this design, absolutely. But it's also true, another point would be, remembering this is a system claim, say, look at the rack at any given point in time, take a snapshot, or turn it off, or lock it in place. There's going to be exactly one of those rods at the storage end. It's going to have all of the things, and it's going to be exactly the same in this respect. The only difference, the only difference, is that instead of having to manually take packages off the rod and put different ones on if you want something different on the rod, there's this internal conveyor belt that can move one rod to another. But at any given time, at each end, there's one rod with one kind of package at each XY coordinate on the picking plane. And the question then is whether that internal restocking function, what happens behind the picking plane, matters to the claims. And one, it doesn't for the claim construction reasons we've been arguing, but second, if you look at the specification, it strongly suggests that the specifics of what happens inside the storage area location don't matter any more than the specifics of what's inside the computer processor. And that's the first. If you look at figures 1 and 15, which show the entire patent's invention in some detail, when it says storage rack, it's just a big empty white box that says storage rack. There's detail elsewhere not in there. And then if you look at specification, it says that figures 3, 4, and 5 provide examples of storage racks, and that a variety of storage racks will do. A variety of storage racks will do, because that's not something that the inventor claims to have invented or to have staked his invention on. And the specification also says that there are two important common features of the exemplary storage racks, suggesting that those are the two things that really matter. One is the use of XY coordinates, which is what we're discussing here. The other is that there's enough room between the packages that picking means can take one at a time. So it works. Those don't have any bearing here. So the point is that everything in the specification suggests that the invention here resides in how these various parts work together with the front of the storage rack, not with what happens inside the white box, inside the middle of the storage rack. That's not what was invented here. So it would be similar to if I had a patent on a car with an engine under the hood. A car with an engine. At the time, say it was internal combustion engines, because that's probably when I actually could have gotten that kind of patent. When diesel engines later come along, if my patent is still valid, it's not going to matter that it's a different kind of engine if I really have a patent on a car with an engine. The reason being that what happens under the hood doesn't matter to the claim scope. And this brings me back to my point about why, under cohesive technologies, you really are supposed to set aside the accused products when you're determining the claim's meaning. Because if you do that, you look at what the PTO and the patent applicant were looking at, the intrinsic evidence. And you see that all the intrinsic evidence indicates storage area locations are definitely places on the picking plane and XY coordinate locations that are as well, because the XY, as you see in the figures, is that two-dimensional plane up front. It's when you get into the accused products and start thinking about whether there are differences that it starts to get confusing. I think the problem is your argument. I mean, it makes sense, but that's not what the claims say. And when you look, for example, at element E, it goes on and says, the machine-readable labels on packages located within the storage area, wherein only one type of package is stored in each XY coordinate location. And, yeah, again, this is the, it is because, and again, this is sort of a different factual issue that they, but it is because with the XY coordinate location in our view being on the picking plane, at any given time, there's one kind of package. Remember, it's a system claim. You can take a snapshot. At any given time, there's one rod there with one kind of package. And that's why there's one kind of package. And it's also, in terms of the distinctness limitation I'm talking about, again, I don't think there's any dispute that each package doesn't have a different XY coordinate. Any package on the same rod is supposed to have the same XY coordinate. So again, XY distinct doesn't really mean different from every other, or unique doesn't really mean different from any other. Instead, distinct and unique just mean that for every package there's one XY coordinate. And that is, any package in there can go to exactly one XY coordinate on the loading end. And at any given point on the picking plane, there's going to be one package there at all times. Go back to the snapshot, because it's a system claim. Any more questions from you? We fully supported. Thank you, Mr. Josepher and Mr. Fabrikant. The case is taken under submission.